# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **DANA LA CIER RILEY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION FILE NO.** |
| | : | **1:14-CV-02678-AJB** |
| **CAROLYN W. COLVIN,** | : | |
| *Acting Commissioner* | : | |
| *of Social Security,* | : | |
| | : | |
| **Defendant.** | : | |

## O R D E R   A N D   O P I N I O N[1]

Plaintiff Dana La Cier Riley ("Plaintiff") brought this action pursuant to

sections 205(g) and 1631(c) of the Social Security Act, 42 U.S.C. §§ 405(g) and

1383(c)(3), to obtain judicial review of the final decision of the Acting Commissioner

of the Social Security Administration ("the Commissioner") denying her applications

for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits

---

[1]      The parties have consented to the exercise of jurisdiction by the
undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil
Procedure. [*See* Dkt. Entries dated 11/19/2014 and 11/20/2014]. Therefore, this Order
constitutes a final Order of the Court.

("SSI") under the Social Security Act.[2]  For the reasons below, the undersigned **AFFIRMS** the final decision of the Commissioner.

## I.      PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on March 1, 2011, alleging disability commencing on December 15, 2010.  [Record (hereinafter "R") 14].[3]  Plaintiff's applications were denied initially and on reconsideration.  [*Id*.].  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and an evidentiary hearing was held on September 27, 2012.  [R28-51].  The ALJ issued a decision on November 19,

---

[2]      Title II of the Social Security Act provides for federal Disability Insurance Benefits.   42 U.S.C. § 401 *et seq.*   Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*., provides for Supplemental Security Income Benefits for the disabled.  Title XVI claims are not tied to the attainment of a particular period of insurance disability.  *Baxter v. Schweiker*, 538 F. Supp. 343, 350 (N.D. Ga. 1982).  Otherwise, the relevant law and regulations governing the determination of disability under a claim for DIB are nearly identical to those governing the determination under a claim for SSI.  *Wind v. Barnhart*, 133 Fed. Appx. 684, 690 n.4 (11th Cir. June 2, 2005) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 n.4 (11th Cir. 1986)).   In general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "period of disability," or to recover SSI, although different statutes and regulations apply to each type of claim. *See* 42 U.S.C. § 1383(c)(3) (establishing that the judicial provisions of 42 U.S.C. § 405(g) are fully applicable to claims for SSI). Therefore, to the extent that the Court cites to SSI cases, statutes, or regulations, they are equally applicable to Plaintiff's DIB claims, and vice versa.

[3]      The parties do not object to the ALJ's recitation of the procedural history. [*See* Docs. 10, 11].

AO 72A
(Rev.8/8
2)

2012, finding that Plaintiff was not disabled.  [R14-22].  Plaintiff sought review by the Appeals Council, and the Appeals Council denied Plaintiff's request for review on June 17, 2014, making the ALJ's decision the final decision of the Commissioner. [R1-6].

Plaintiff then filed an action in this Court on August 19, 2014, seeking review of the Commissioner's decision.  [*See* Docs.1, 2].  The answer and transcript were filed on March 4, 2015.  [Docs. 6, 7].  On April 3, 2015, Plaintiff filed a brief in support of her petition for review of the Commissioner's decision, [Doc. 10], and on April 24, 2015, the Commissioner filed a response in support of the decision, [Doc. 11].  Plaintiff did not file a reply brief.  (*See* Dkt.).  The matter is now before the Court upon the administrative record and the parties' pleadings and briefs, and is accordingly ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.    STATEMENT OF FACTS

### A.    Background

Plaintiff was 31 years old on the alleged onset date of disability.  [*See* R31, 464]. Plaintiff has at least a high school education, [R31], and past relevant work as a hairstylist, telemarketer, routing clerk, and cashier.  [R21, 32, 33, 46-47].  Plaintiff alleges disability due to anxiety, depression, and bipolar disorder.  [*See* R31].

3

**B.     Medical Records**

Plaintiff began treatment at GRN Community Service Board in November 2010 and has been diagnosed with bipolar disorder.  [R284].  At intake, Plaintiff reported having mental health symptoms for the past two years including severe panic attacks, mood swings, and depression.  [R290].

In December 2010, Plaintiff met with Latasha Brown, LPC, for individual therapy.  [R291, 292].  On mental status, Counselor Brown noted that Plaintiff spoke clearly and logically, had normal affect, and was adequately groomed.  [R292].  Plaintiff reported that she noticed a decline in symptoms since starting her new dosage of medication.  [*Id*.].  Plaintiff met with Counselor Brown again in February 2011 in which Plaintiff reported "doing okay overall" but reported continued bouts of depression that are less frequent but longer in duration.  [R296].  When Plaintiff met with Counselor Brown in March 2011, Plaintiff and her family reported that Plaintiff had mood swings, including angry outbursts and rage, panic attacks, paranoia, crying spells, and suicidal  thoughts.  [R300].

In March 2011, Plaintiff met with Carolynn Keebler, RN, for medication management.  [R298].  Nurse Keebler noted that Plaintiff was pleasant and interactive, had a euthymic affect and Plaintiff reported that she had a "pretty good" mood.  [*Id*.].

AO 72A
(Rev.8/8
2)

Plaintiff reported a good response to her medication in that there was a decrease in anxiety and depression. [*Id.*]. Plaintiff reported that she continues to have panic attacks when driving or in crowds. [*Id.*].

Plaintiff also met with Jose Cangiano, MD, in March 2011. [R302]. Dr. Cangiano noted that Plaintiff was alert, polite, and cooperative with no agitation; however, Plaintiff had an anxious/depressive mood and affect and had obsessive thinking. [*Id.*]. Dr. Cangiano noted that Plaintiff reported increased symptoms of depression, anger, and irritability; however Dr. Cangiano also observed that Plaintiff was not consistently taking her medication. [*Id.*].

In April 2011, Dr. Cangiano completed a Mental Impairment Questionnaire. [R351-53]. In it, he opined that Plaintiff has an abnormal ability to get along with the public, supervisors and co-workers due to her difficulty in maintaining impulsive verbal behavior in stressful situations; she has an abnormal ability to deal with changes in the work setting due to stressors that can affect mood which Dr. Cangiano believes will affect Plaintiff's performance in work settings, especially if there are changes; and she has an abnormal ability to make simple work-related decisions, but only when she is symptomatic and, with normal mood, Plaintiff can make work-related decisions.

5

[R353].   Dr. Cangiano also opined that it is highly likely that Plaintiff will decompensate or become unable to function under stress.  [*Id*.].

In May 2011, Plaintiff reported to Counselor Brown an increase in symptoms, including depression, mania, and mood swings. [R429].  In a June 2011 appointment, Counselor Brown reported that Plaintiff had a normal affect, although she noted that Plaintiff was not attending sessions as scheduled and was not compliant with medication due to side effects.  [R424].

The following day, Plaintiff saw Dr. Cangiano and presented with anxious/depressive mood and affect.  [R422].  Plaintiff reported that she stopped taking her medication due to side effects, and she complained of anxiety and mood issues. [*Id*.].

In June 2011, Ronald Chase, MD, completed a Psychiatric Review Technique and found that Plaintiff did not have a severe mental impairment.  [R355, 355-68]. Dr. Chase opined that Plaintiff had only mild restriction of activities of daily living; mild difficulties in maintaining social functioning; and mild difficulties in maintaining concentration, persistence, or pace.  [R365].  He noted that the treatment notes indicated that Plaintiff is able to independently handle her personal care, uses public

transportation, drives a car, shops in stores, socializes with others, and is able to follow written and oral instructions.  [R367].  Dr. Chase further reasoned that

> Based on current mental status evidence there is no overt psychosis, formal thought disorder or impaired reality testing.  There was no disorder of perception or cognition elicited and established by diagnostic entity.  There was no pressure of speech noted.  Mood was without notation of euphoria, or mania.  No psychomotor retardation with depression was described.   No suicidal behavior was elicited.   There was no documentation that the claimant's alleged symptoms of bipolar disorder occurred in the absence of substance of abuse (Phentermine).  There was no history of extended or prolonged psychiatric hospitalization.

[*Id.*].

In July 2011, Counselor Brown saw Plaintiff and noted that she presented with a normal, but lethargic affect. [R416].  Plaintiff reported a decrease in angry outbursts, intensity of anxiety, and depression, but reported an increase in panic attacks.  [*Id.*].  Plaintiff also saw Nurse Keebler and presented with a euthymic mood.   [R414].  Plaintiff reported that her depression episodes occurred more frequently, each lasting two days on average, but sometimes three to four days.  [*Id.*].

Plaintiff saw Dr. Cangiano in August 2011 and presented with anxious mood and affect.  [R409].  Dr. Cangiano started Plaintiff on a new medication for her anxiety. [*Id.*].

7

Plaintiff met with Counselor Brown in August 2011 and reported some decrease in her symptoms, but continued to notice anxiety when she awakes in the morning. [R407].  In September 2011, Plaintiff again met with Counselor Brown and reported being able to manage her mood despite the stressor of dealing with grief due to the loss of her aunt.  [R403].  In October 2011, Counselor Brown reported that Plaintiff presented with a dysthymic mood and affect.  [R401].  Plaintiff also reported more frequent and more intense bouts of depression.  [*Id.*].  It was noted that Plaintiff was not on her normal therapy schedule and that Plaintiff would return to her normal therapy schedule to see if that will help with symptoms.  [*Id.*].

In October 2011, medical consultant Spurgeon Cole completed a Mental Residual Functional Capacity ("RFC") Assessment, in which he opined that Plaintiff was not significantly limited in the area of understanding and memory, was moderately limited in the ability to carry out detailed instructions, moderately limited in the ability to maintain attention and concentration for extended periods, moderately limited in the ability to interact appropriately with the general public, moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors, moderately limited in the ability to respond appropriately to changes in the work setting, and moderately limited in the ability to set realistic goals or make plans

8

independently of others.  [R370-72].  Dr. Cole also completed a Psychiatric Review Technique in which he opined that Plaintiff has mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace.  [R384].

Plaintiff saw Dr. Cangiano in November 2011, at which time Dr. Cangiano noted that Plaintiff was alert, polite, and cooperative with no agitation, and had a mildly anxious mood and affect with no overt psychosis.  [R396].  Plaintiff denied an increase in stressors or symptoms and it was noted that Plaintiff was coping effectively with no acute mood decompensation.  [*Id*.].  Dr. Cangiano continued Plaintiff with the current medications and treatment plans.  [*Id*.].  He also completed another form pertaining to Plaintiff's workplace functional capabilities.  [R388-90].  Of note, he opined that Plaintiff has marked difficulties in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and that Plaintiff has marked difficulties in her ability to respond appropriately to changes in the work setting.  [R389].

In December 2011, Plaintiff met with Counselor Brown and presented with normal mood and affect.  [R394].  Counselor Brown noted that Plaintiff had a decrease

9

in depressive symptoms and an increase in self-care.  [*Id*.].  Plaintiff also reported that she had thoughts about changing her priorities so that she can become a future foster care parent.  [*Id*.].

In January 2012, Plaintiff continued to report ongoing depressive symptoms and side effects from the medication.  [R458].  Dr. Cangiano assessed Plaintiff as being impaired by depressive symptoms.  [*Id*.].

Plaintiff began counseling with Donald Davidson, Ph.D., in 2012.  [R461-62].  In a pre-counseling intake form, Plaintiff reported that she stopped taking her medication.  [R464].  In May 2012, Dr. Davidson noted that Plaintiff had not experienced any panic attacks in several months.  [R462].

### C.    Evidentiary Hearing Testimony

At the hearing, Plaintiff testified that she is a hairstylist and works from home.  [R32].  Her hours vary and she works four to five hours or up to nine hours if she is braiding hair.  [R32-33].  She testified that she makes $600 a month and about $700-800 during peak season.  [R33].  When the ALJ asked why she put in her work history report that she could made $600 a week, Plaintiff responded that she did not recall writing that statement, but it is very possible that she could make that.  [*Id.*].  She testified that she is no longer doing work as a hairstylist due to the depression and

10

stopped working around November or December 2011. [R37]. Plaintiff acknowledged that she reported being disabled as of December 2010 and continued to work as a hairstylist through December 2011, but she stopped at that time because the depression and mood swings were getting worse and she began having severe panic attacks. [R37-38].

The ALJ asked Plaintiff if there was a time when she quit taking her medication to which Plaintiff responded "no," but stated that there was a time that she ran out of the medication and she had to pay for it out of pocket. [R38]. The ALJ informed Plaintiff that there was a medical record from Grace Point that indicated that she stopped taking the medication, to which Plaintiff responded that she could not afford them, but never stopped taking them. [*Id*.]. When the ALJ quoted Plaintiff's words from her profile at Grace Point in which she stated that she stopped taking the medication, Plaintiff responded that she does not remember doing that. [Doc. 39].

Plaintiff testified that she has a son that is home-schooled and that she is his learning coach. [R34-35]. As a learning coach, Plaintiff testified that she supervises him to make sure he completes and understands the lessons and she reports his work online daily. [R35-36]. Her son also has a primary teacher. [R35]. Plaintiff testified that she helps her son with his school assignments, fixes food for him when she can,

11

goes to church with him, takes him to the library, and takes him to the playground when she feels up to it.  [R36].

Plaintiff testified that her husband cooks, helps her clean and helps her take care of her son.  [R39-40].  Plaintiff testified that, on average, there would be eight days a month that she does not feel like getting out of bed.  [R40].

Plaintiff testified that she cannot stand for a long period of time because she experiences headaches, panic attacks, chest pain, and dizziness.  [*Id*.].  She takes a heavy dose of ibuprofen for the headaches.  [R41].  She also seeks treatment from Dr. Cangiano for therapy and medication and Dr. Davidson for talk therapy.  [*Id*.]. Plaintiff testified that the talk therapy is helping; she has side effects from the medication but it helps with the mood swings but not with the depression.  [R42]. Plaintiff testified that she has not noticed a change in her depression since starting the medication, but the medication for the mood swings help.  [*Id*.].  Some of the side effects Plaintiff experiences are night sweats, dizziness, weight gain, loss of appetite, crying spells, itchiness, and swelling of her hands and feet.  [*Id*.].  Plaintiff testified that her doctors have changed the dosage and the medication and are trying to figure out what works for her.  [R42-43].

12

Plaintiff testified that she has had panic attacks for a couple of years; she gets nervous, her hands sweat, it is difficult for her to be in closed spaces and she has to have the windows down when she rides in the car. [R43]. She stated that she gets panic attacks three or four times a month and they are triggered when she has a set plan to do something. [R43-44].

Plaintiff testified that, at times, she has problems maintaining focus or concentration. [R44]. She reads biographies and things having to do with history and although she is able to follow along, she gets easily distracted. [R44-45]. She also stays in touch with out-of-state friends through e-mail, sometimes by phone, and sometimes they will visit during the holidays. [R45].

The vocational expert ("VE") testified that Plaintiff's work as a hairstylist was classified as light exertion, her work as a telemarketer as sedentary, her work as a routing clerk as medium exertion, and her work as a cashier as light exertion, and all the jobs are semi-skilled or skilled. [R48].

The VE testified that a hypothetical person with Plaintiff's age, education and previous work experience, who could perform work at all exertional levels, can follow and perform both simple and detailed instructions, and would have difficulties during the day with sustained concentration and interaction with others one to four days out

13

of the month would not be able to perform her past relevant work, and that there would be no other jobs that the person could perform.  [R49].

The VE testified that a hypothetical person with Plaintiff's age, education and previous work experience, who could perform work at all exertional levels, can follow and perform both simple and detailed instructions, but would be off task less than 10 percent of the day one to four days out of the month with no restriction on interaction with others would be able to perform her past relevant work.  [R49-50].

## III.   ALJ'S FINDINGS OF FACT

The ALJ made the following findings of fact and conclusions of law:

1.   The claimant meets the insured status requirements of the Social Security Act through September 30, 2015.

2.   The claimant engaged in substantial gainful activity during the following periods: January 2008 to December 2011, per her testimony (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

. . .

3.   However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

4.   The claimant has the following severe impairments: depression, anxiety, and bipolar disorder (20 CFR 404.1520(c) and 416.920(c)).

14

5.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

. . .

6.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: can follow and perform both simple and detailed instructions but would be off task one to four days of the month for less than 10 percent of the day.

. . .

7.      The claimant is capable of performing past relevant work as a hairstylist, telemarketer, routing clerk, and cashier.  This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

. . .

8.      The claimant has not been under a disability, as defined in the Social Security Act, from December 15, 2010 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[R16-22].

15

In support of the decision, the ALJ found that Plaintiff has mild restrictions in activities of daily living; mild difficulties in social functioning; and moderate difficulties in maintaining concentration, persistence or pace.  [R17].

With regard to the RFC, the ALJ first discussed Plaintiff's hearing testimony. [R18-19].  The ALJ noted that Plaintiff testified that she is disabled due to depression, mood swings, and panic attacks, however, the ALJ found that the record does not support a disabling psychological impairment.  [R19].  The ALJ noted that the treatment records reflect that the medications are relatively effective in controlling her symptoms, however, she has been noncompliant by not taking them consistently in Spring 2011 and she stopped taking them altogether by Spring 2012.  [*Id*.].  The ALJ specifically noted that progress notes in March 2011 and December 2011 indicated that Plaintiff had a good response to her medication.  [*Id*.].  The ALJ also noted that, at the December 2011 visit, Plaintiff had a normal mental status and discussed plans to become a future foster care parent.  [*Id*.].  The ALJ further noted that in May 2012, Plaintiff reported that she had not experienced any panic attacks in several months despite the fact that she had ceased taking the medication and her progress notes did not indicate any significant change in the severity of her symptoms.  [*Id*.].

16

The ALJ discussed Dr. Cangiano's August 2012 treatment notes in which he noted that Plaintiff was previously treated "successfully" with medication and she was seeking a reevaluation for mood swings, depression, and panic attacks.  [R20].  The ALJ also discussed the two medical source statements provided by Dr. Cangiano in which the ALJ found them to be contradictory and inconsistent with Dr. Cangiano's own notes and the evidence as a whole.  [*Id*.].  Specifically, the ALJ discussed Dr. Cangiano's medical source statement from April 2011 where Dr. Cangiano opined that Plaintiff had abnormal thought processes, insight, impulse control, and ability to interact with others, deal with changes in the work setting, and make simple work related decision.  [*Id*].  However, the ALJ noted that the record reflected that Plaintiff was having a good response to medications and reported feeling well one month earlier.  [*Id*].  The ALJ also noted that in Dr. Cangiano's November 2011 medical source statement, he indicated that Plaintiff had a marked ability to complete a normal workday, perform at a consistent pace, and respond to pressures; however, the record reflects that one month later, Plaintiff was responding well to treatment and she was considering becoming a future foster parent, abilities which the ALJ found to be wholly inconsistent with her claims of disabling psychological impairment.  [*Id*.].

17

The ALJ mentioned Plaintiff's testimony that she is unable to maintain employment because she is unable to get out of bed at least eight days per month due to depression and that she has panic attacks when she is in public and in the car.  [*Id*]. However, the ALJ found that the record does not support her testimony as the record does not contain emergency intervention, psychiatric hospitalizations, or inpatient mental health admissions for acute depression or anxiety.  [*Id*].  The ALJ further noted that Plaintiff is being treated with psychotropic medications and the record does not support a finding that they are ineffective in controlling her symptoms when compliant. [*Id*].

The ALJ also discussed Plaintiff's reported daily activities in which the ALJ noted that Plaintiff is able to drive, shop, home-school her son, take him to the library and playground, cook, attend therapy sessions, and perform hobbies such as reading, watching movies, art, paint, sing, make jewelry and crafts.  [*Id*.].  The ALJ found these activities to require a basic level of social interaction and independent functioning. [*Id*.].  The ALJ further noted that Plaintiff goes to church, socializes with friends, cares for her sons and Plaintiff wrote that she follows written instructions "very well" and spoken instructions "average."  [R20-21].  The ALJ determined that this does not suggest more than a moderate limitation in the ability to concentrate, follow

AO 72A
(Rev.8/8
2)

instructions, or perform work tasks.   [R21].   The ALJ also discussed Plaintiff's testimony that she is able to follow television programs, read without problems, and assists her son with home-school tasks as a "learning coach," to which the ALJ found this to suggest that Plaintiff is not so limited by psychological symptoms that she is precluded from performing all work related activity, as she is relatively independent in daily functioning.  [*Id.*].

The ALJ gave significant weight to the opinions of the state agency physicians to the extent that they indicate that the claimant is able to perform work activity.  [*Id.*]. The ALJ gave limited weight to the opinion of Dr. Cangiano, finding that it is not consistent with the totality of the evidence in the record demonstrating relatively stable symptoms and intermittent noncompliance.  [*Id.*].

## IV.    STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   The impairment or impairments must result from anatomical, psychological, or physiological abnormalities

19

which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner. The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a). The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant must prove at step one that he is not undertaking substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments that significantly limits his ability to perform basic work-related activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of

20

Impairments), the claimant will be considered disabled without consideration of age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At step four, if the claimant is unable to prove the existence of a listed impairment, he must prove that his impairment prevents performance of past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform. *Doughty*, 245 F.3d at 1278 n.2. To be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists. *Id.*

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Despite the shifting of burdens at step five, the overall burden rests on the claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy. *Doughty*, 245 F.3d at 1278 n.2; *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superceded by statute*

21

AO 72A
(Rev.8/8
2)

*on other grounds by* 42 U.S.C. § 423(d)(5), *as recognized in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11ᵗʰ Cir. 1991).

## V.    SCOPE OF JUDICIAL REVIEW

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner.  Judicial review of the administrative decision addresses three questions:  (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues.  *Washington v. Astrue*, 558 F. Supp. 2d 1287, 1296 (N.D. Ga. 2008); *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980).  This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11ᵗʰ Cir. 2005).  If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive.  *Lewis v. Callahan*, 125 F.3d1436, 1439-40 (11ᵗʰ Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11ᵗʰ Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11ᵗʰ Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11ᵗʰ Cir. 1987) (per curiam); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11ᵗʰ Cir. 1986)  (per curiam); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11ᵗʰ Cir. 1983).

22

"Substantial evidence" means "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision. *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). In contrast, review of the ALJ's application of legal principles is plenary. *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

## VI.   CLAIMS OF ERROR AND PARTIES' CONTENTIONS

Plaintiff raises only one issue on appeal: that the ALJ failed to give great weight to the opinion of Dr. Cangiano, Plaintiff's treating physician. [Doc. 10 at 1].

Plaintiff argues that the ALJ failed to give great weight to Plaintiff's treating physician's opinions without providing sufficient rationale for her failure to do so. [*Id*. at 10].  Plaintiff argues that the ALJ impermissibly gave more weight to the opinions of the non-examining state agency physicians because a treating physician's opinion is entitled to more weight than a non-treating physician's opinion and there is no contradictory evidence to support good cause for doing so.  [*Id*. at 10-11 (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985))].  Plaintiff also argues that the ALJ failed to address the factors in considering a medical source's opinion and that the factors support the opinions of Dr. Cangiano.  [*Id*. at 11-12 (citing 20 C.F.R. §§ 404.1527(d), 416.927(d))].  Plaintiff argues that Dr. Cangiano's opinions are supported by the record because the majority of the record pertains to treatment of her mental impairments.  [*Id*. at 11-12].  Plaintiff further argues that his opinions are consistent with his own treatment notes because Dr. Cangiano treated Plaintiff for her mental impairments on multiple occasions.  [*Id*. at 12].  Plaintiff argues that Dr. Cangiano's opinions are further supported by the treatment records of Dr. Davidson, Latasha Brown, and Carolynn Keebler.  [*Id*.].  Thus, Plaintiff argues, Dr. Cangiano's opinions are well supported by the record as a whole and Plaintiff's

AO 72A
(Rev.8/8
2)

own testimony and, as such, the ALJ's explanation of her rejection of the opinions is inadequate.  [*Id.*].

Plaintiff further argues that the ALJ failed to explain whether good cause exists for failure to give great weight to Plaintiff's treating physician.  [*Id.* at 13 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997))].   Plaintiff argues that Dr. Cangiano's opinions were not bolstered by the evidence as his treatment notes support his opinions; the opinions are also supported by the treatment records of Dr. Davidson, Latasha Brown, and Carolynn Keebler; and, although Drs. Chase and Cole provided contradictory opinions, neither doctor examined Plaintiff, while Dr. Cangiano has the benefit of ongoing treating relationships that spanned over one and a half years.  [*Id.* at 13-14].

In response, the Commissioner argues that the ALJ properly considered the records and opinions of Dr. Cangiano.  [Doc. 11 at 6].  The Commissioner argues that the ALJ provided good reasons, supported by substantial evidence, for giving little weight to Dr. Cangiano's opinions.  [*Id.* at 8].  The Commissioner notes that the ALJ discussed that Dr. Cangiano's opinions were inconsistent with his treatment notes and the record as a whole.  [*Id.*].  As support the Commissioner notes that the ALJ compared Dr. Cangiano's opinions with the treatment notes of Nurse Keebler and

25

Counselor Brown and found them to be inconsistent.  [*Id*. at 8-9].  The Commissioner

specifically notes that the ALJ found that Plaintiff's plan to become a foster parent was

wholly inconsistent with her claims of disabling psychological impairments.  [*Id*. at 9].

The Commissioner also noted that the ALJ gave little weight to Dr. Cangiano's

opinions as the record showed Plaintiff was noncompliant with the medication and that

her symptoms were controlled with medication when compliant.  [*Id*. at 9-10].  The

Commissioner further argues that the ALJ properly noted Plaintiff's activities which

further undermines Dr. Cangiano's opinions.  [*Id*. at 10-11].  Moreover, the

Commissioner argues that the opinions of two non-examining state agency consultants

supported the ALJ's decision.  [*Id*. at 12].  The Commissioner contends that opinions

of non-examining medical sources may override opinions from treating sources,

provided that the non-examining source's opinion is supported by the record, which

was the case here.  [*Id*. at 13 (citing 20 C.F.R. §§ 404.1527(e), 416.927(e))].  To

Plaintiff's argument that the ALJ did not provide sufficient rationale for discounting

Dr. Cangiano's opinion, the Commissioner argues that Plaintiff ignores much of the

ALJ's decision.  [*Id*. at 14].  The Commissioner further argues that the regulations do

not require an ALJ to discuss each factor in the decision.  [*Id*. at 15 (citing

26

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Lawton v. Comm'r of Soc. Sec.*, 431 Fed. Appx. 830, 833 (11th Cir. June 22, 2011))].

## VII.  DISCUSSION

The regulations govern how an ALJ will evaluate opinion evidence. *See* 20 C.F.R. § 404.1527. The ALJ must consider all of the following factors in deciding the weight to be given to a medical opinion:

> (1) Examining relationship. Generally we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

> (2) Treatment relationship. Generally we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. . . .

> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

27

(4) Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization.  We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

(6) Other factors.  When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. . . .

20 C.F.R. § 404.1527(c).

In addition to the guidelines of how an ALJ is to weigh medical opinions spelled out above, the regulations provide specific guidelines for how to evaluate the opinion of a treating physician.  20 C.F.R. § 404.1527(c)(2).  The regulations provide:

If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) *is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion.  *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.*

(i) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.  When the treating source has seen you a

28

number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. . . . When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

20 C.F.R. § 404.1527(c)(2) (emphasis supplied).

Despite Plaintiff's arguments to the contrary, the Court finds that the ALJ provided "good reasons" for not giving controlling weight to the opinions of Dr. Cangiano. Specifically, the Court agrees that the opinions are not supported and are inconsistent with the evidence of record. As argued by the Commissioner, Plaintiff ignores the ALJ's clearly articulated reasons for giving less weight to the opinions: namely, that the opinions are inconsistent with treatment notes near the time of the opinions that Plaintiff was responding well to treatments, that Plaintiff was considering becoming a foster parent, Plaintiff was not compliant with her medications, and Plaintiff's daily activities, contradict a finding of a disabling psychological impairment. [R20-21].

Instead, Plaintiff cites to Plaintiff's treatment in general to support Dr. Cangiano's findings pertaining to her limitations. However, Plaintiff does not point to specific evidence, either in the form of complaints by Plaintiff or treatment notes that support Dr. Cangiano's opinions. Even if Plaintiff had made specific arguments, it is not this Court's job to reweigh the evidence. *Dyer*, 395 F.3d at 1210. Rather, this Court's job is to determine if the ALJ considered all the evidence of record and if so, whether substantial evidence supports the conclusion made by the ALJ. Plaintiff has not pointed to any additional evidence that supports such extreme functional limitations. Moreover, the Court must affirm "[i]f the Commissioner's decision is supported by substantial evidence, . . . even if the proof preponderates against it." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer*, 395 F.3d at 1210). As Plaintiff does not challenge the ALJ's findings that Plaintiff did well when she was compliant with the medication and that her stated activities and desire to be foster parent are inconsistent with a finding of disabling psychological impairment, the Court does not find error in the ALJ's assignment of weight to Plaintiff's treating physician and finds that substantial evidence supports it and the decision.

30

Moreover, where substantial evidence supports an ALJ's determination to accord less weight to the treating physician, the ALJ does not err by according greater weight to the opinion of a non-examining physician if such opinion is supported by substantial evidence.   *See Forsyth v. Comm'r of Soc. Sec.*, 503 Fed. Appx. 892, 893 (11th Cir. Jan. 16, 2013); 20 C.F.R. § 404.1527(e).  Here, Plaintiff does not challenge the findings of the non-examining sources except to argue that they did not have a treating relationship with Plaintiff.  As Plaintiff does not dispute the actual findings made by the non-examining sources, the undersigned finds that substantial evidence supports the ALJ's decision to give their opinions significant weight.  As there are no other issues, the Court finds that substantial evidence supports the ALJ's decision.

## VIII.  CONCLUSION

For the reasons above, the Court **AFFIRMS** the final decision of the Commissioner.

The Clerk is **DIRECTED** to enter final judgment in Defendant's favor.

**IT IS SO ORDERED and DIRECTED,** this the 14th day of March, 2016.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/8
2)